**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| KELLYTOY WORLDWIDE, INC. and KELLYTOY (USA), INC.,<br><br>               Plaintiffs,<br><br>   vs.<br><br>TY INC., and DOES 1- 10<br><br>               Defendants. | Case No. |

**COMPLAINT**

Plaintiffs KELLYTOY WORLDWIDE, INC., a California corporation ("Kellytoy Worldwide") and KELLYTOY (USA), INC., a California corporation ("Kellytoy USA") (together, "Kellytoy") bring this action against defendant TY INC. ("Ty") and DOES 1 through 10 (collectively, "Defendants") for injunctive relief and damages under the laws of the United States and the State of Illinois, as follows:

**JURISDICTION AND VENUE**

1.      This action arises under the trademark laws of the United States, 15 U.S.C. §§ 1114 and 1125(a), under the statutory and common law of trademark/trade dress infringement and unfair competition.

2.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367, and 15 U.S.C. §§ 1114, 1116, 1117, 1121, and 1125.

3.      Venue lies in this judicial district pursuant to 28 U.S.C. § 1391 and 1400(a).

4.      This Court has personal jurisdiction over Defendants, as Defendants are doing business in the State of Illinois and this District and are subject to the jurisdiction of this Court.

5.    Ty has purposely and willfully directed its intentional misuse and infringement of the Kellytoy trademark and trade dress in the State of Illinois with the knowledge that the actions have caused damage within the State of Illinois.

6.    By transacting business with customers in this District, and by using the goodwill and reputation built by Kellytoy, in this district, Ty has purposely availed itself of the privilege of conducting business in this judicial district and has established sufficient contacts with the State of Illinois such that it is subject to jurisdiction in Illinois.

7.    To the extent Kellytoy's claims arise from Illinois statutory and/or common law, this Court has proper jurisdiction because it bears a logical relationship to the aggregate core of operative facts relating to Kellytoy's claims under the Lanham Act.

8.    Defendant Ty is a corporation organized under the laws of the state of Delaware with its principal place of business in 250 Chestnut Avenue, Westmont, Illinois 60559.

## NATURE OF THE ACTION

9.    This action, as alleged below, arises specifically because defendant Ty has embarked on a transparent campaign to hijack Kellytoy USA and Kellytoy Worldwide's longstanding and well-earned goodwill in the plush toy marketplace by infringing on Kellytoy USA's registered trademark and Kellytoy Worldwide's distinctive trade dress.  Ty, in its haste to sow customer confusion and consequently draw business from Kellytoy USA, has employed a name, PUFFIES, that is a virtual and linguistic replica of Kellytoy USA's registered PUFFY® trademark.  Indeed, the Ty mark sounds the same, looks the same, means essentially the same thing, and is used for similar goods as Kellytoy USA uses in connection with its long established PUFFY® mark.  That duplication is plainly deliberate – Ty is attempting to confuse customers into believing, falsely, that its goods are associated with and derive from the same source of

origin as Kellytoy USA's products.  Beyond all that, Ty is offering for sale its competing plush toys (bearing the infringing PUFFIES mark) in the same tradeshows as Kellytoy USA's products, all but assuring the intended and expected customer confusion.

10.    In addition, Kellytoy Worldwide's SQUISHMALLOW branded plush toys ("Squishmallows") – representative samples of which are depicted in **Exhibit 1** hereto – are one of the world's hottest plush toy lines.  Kellytoy Worldwide's Squishmallows feature a highly distinctive and widely recognized trade dress (described below), which Kellytoy Worldwide pioneered and created.  Kellytoy Worldwide actively markets its Squishmallows through numerous media outlets, including, without limitation, on social media, at tradeshows, through Squishmallows.com, amazon.com, walmart.com, walgreens.com and target.com, and on Kellytoy Worldwide's website and social media accounts, depicting images of its proprietary Squishmallows line of plush toys.

11.    The explosion in popularity of Kellytoy Worldwide's Squishmallows and the resulting and widespread customer and industry recognition, has unfortunately led to illegal imitation by some of Kellytoy Worldwide's competitors.  Defendants are merely the latest, though most brazen and capable, of the intellectual property pirates seeking to conscript Kellytoy Worldwide's goodwill for unfair competitive purposes.   Indeed, Kellytoy Worldwide has discovered that defendant Ty has been making and offering for sale to customers nine (9) knock-off products under the moniker Squish-A-Boo that incorporate Kellytoy Worldwide's Squishmallows Trade Dress (defined below) for distribution to customers throughout the United States and within this state and district that infringe upon Kellytoy Worldwide's Squishmallows Trade Dress.

12.    Accordingly, Kellytoy has no alternative but to take steps to preserve and protect

its intellectual property from this naked attack, and it thus has filed this action for trademark

infringement, trade dress infringement, unfair competition and false designation of origin under

the Lanham Act, 15 U.S.C. § 1125(a), Illinois unfair competition laws, Illinois Deceptive Trade

Practices Law pursuant to 815 ILCS §§ 510/1, *et seq*. and the common law trade dress

infringement.

## THE PARTIES

13.     Kellytoy (USA), Inc. is a California corporation with its principal place of

business located in Los Angeles, California.

14.     Kellytoy Worldwide, Inc. is a California corporation with its principal place of

business located in Los Angeles, California.  (Kellytoy USA and Kellytoy Worldwide will

sometimes be referred to collectively herein as "Kellytoy.")

15.     Kellytoy is in the business of developing, manufacturing and selling children's

toys including, among other things, plush toys.

16.     Defendant Ty Inc. ("Ty") is a Delaware corporation with its principal place of

business in 250 Chestnut Avenue, Westmont, Illinois 60559.

17.     Ty is in the business of manufacturing and selling children's toys, including plush

toys.

18.     The true names and capacities of defendants sued herein as DOES 1-10, inclusive,

are unknown to Kellytoy, who therefore sues said defendants by such fictitious names.  Kellytoy

will amend this Complaint to allege their true names and capacities when the same are

ascertained.

19.     Upon information and belief, at all relevant times mentioned in this Complaint,

Defendants, and each of them, were acting in concert and active participation with each other in

committing the wrongful acts alleged herein, and were the agents of each other and were acting within the scope and authority of that agency and with the knowledge, consent and permission of one another.

## BACKGROUND FACTS

### Kellytoy and Its Protected Intellectual Property Rights

20.     Kellytoy USA and Kellytoy Worldwide are innovative and highly successful creators, manufacturers, distributors and sellers of unique plush toys.

21.     Kellytoy USA has been in business for approximately three decades and in that time has developed a reputation for producing high quality, unique, and creative plush toys that are highly prized in the industry and in widespread demand by the consuming public.  Similarly, Kellytoy Worldwide has been in business for nearly two decades and developed its own reputation for producing high quality, unique, and creative plush toys, including, most recently, its highly successful Squishmallows line of plush toys in connection with the SQUISHMALLOW® and SQUISHMALLOWS brands.  (*See, e.g.,* **Exhibit 1**.)

22.     Kellytoy devotes extensive time and resources promoting and preserving its image and identity and the image and identity of its high-quality plush toys.  That includes, without limitation, creating distinctive designs and marks for use on its products, seeking U.S. trademark and copyright registrations for such marks and designs, and taking all steps necessary to preserve and protect its intellectual property.

### Kellytoy USA's PUFFY® TRADEMARK

23.     In particular, Kellytoy USA is the sole and exclusive owner of United States Federal Trademark Registration No. 4517007 for the trademark PUFFY (the "PUFFY Mark") for "plush toys, not intended for pets."  A true and correct copy of United States Certificate of

Registration No. 4517007 for the PUFFY Mark is attached as **Exhibit 2**.

24.     Kellytoy USA has been and is the sole owner of all right, title and interest in and to the PUFFY Mark and the United States trademark registration therefor (occasionally referred to as the "Mark").

25.     Kellytoy USA has made widespread and prominent use of the PUFFY Mark in connection with the marketing and sale of its goods under that trademark since at least as early as 2009, such that, in addition to being inherently distinctive, the mark has also acquired distinctiveness in the minds of consumers as designating a single source, Kellytoy USA.   As a result of such promotion and sales, coupled with the reputation of the high quality of Kellytoy USA's goods sold in connection with the PUFFY Mark, the PUFFY Mark has attained goodwill among consumers nationally.

### Kellytoy Worldwide SQUISHMALLOW® TRADEMARK

26.     Kellytoy Worldwide is the sole and exclusive owner of United States Federal Trademark Registration No. 5454574 for the trademark SQUISHMALLOW, often also designated as SQUISHMALLOWS, (the "SQUISHMALLOW Mark") for "plush toys."  A true and correct copy of United States Certificate of Registration No. 5454574 for the SQUISHMALLOW Mark is attached as **Exhibit 3**.

27.     Kellytoy Worldwide has made widespread and prominent use of the SQUISHMALLOW Mark in connection with the marketing and sale of its goods under that trademark since at least as early as 2017, such that, in addition to being inherently distinctive, the mark has also acquired distinctiveness in the minds of consumers as designating a single source, Kellytoy Worldwide.   As a result of such promotion and sales, coupled with the reputation of the high quality of Kellytoy Worldwide's goods sold in connection with the SQUISHMALLOW

Mark, the SQUISHMALLOW Mark has attained goodwill among consumers nationally.

## Kellytoy Worldwide's Squishmallows Trade Dress

28.    In 2016, Kellytoy conceived of and began creating its Squishmallows line of plush toy designs that shares common, unique features distinguishing them from the goods of others. Most of these designs are the subject of United States Copyright Registrations or pending applications therefor, and each is sold in commerce under the Squishmallows brand. In essence, Kellytoy created an entirely new class of plush toys that has carved a previously non-existent niche in the marketplace. And that newly created niche has, in turn, spawned a cultural craze in which numerous imitators have emerged, not the least of which are Defendants.

29.    In that regard, however, Kellytoy Worldwide has been and is the sole owner of all right, title and interest in and to the Squishmallows line that possesses unique, recognizable and distinguishing features that are common across much of the Squishmallows line. From 2016 to the present, Kellytoy Worldwide has expended large sums of money in developing, advertising and promoting the Squishmallows Trade Dress (defined below), and the product designs bearing it, through the United States. In fact, Kellytoy Worldwide is spending approximately $1,000,000 annually in direct to consumer and business-to-business advertising in connection with its Squishmallows branded goods.

30.    Due to Kellytoy Worldwide's distinctive trade dress, coupled with its unique designs, extensive marketing efforts, media coverage, and market penetration, the Squishmallows Trade Dress has acquired distinctiveness in the marketplace when applied to plush toys. In fact, because of Kellytoy Worldwide's extensive promotional activities and widespread display of plush toys bearing the Kellytoy Trade Dress directed to the public, and a consequence of Kellytoy Worldwide's well-earned reputation for fairness and integrity in

dealings with its customers, the relevant consuming public has come to recognize and associate plush toys bearing embodying the trade dress as high quality goods connected with or offered by Kellytoy Worldwide. As a result, that trade dress has valuable goodwill and consumer recognition associated with it and has come to symbolize the exemplary reputation of Kellytoy Worldwide.

31. Consistent with that advertising and marketing scope, Kellytoy Worldwide sells a broad range of Squishmallows branded plush toys featuring the brand's iconic trade dress, and whose overall look, feel and image – and in particular but without limitation its shapes, colors, textures and graphics – serve as a distinctive source identifier to the consuming public. Though not easily reduced to writing, these features include: (1) substantially egg/bell shaped plush toys depicting various similarly shaped fanciful renditions of animals/characters; (2) simplified Asian style Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell shape of the toys; (3) embroidered facial features, such nostrils, and/or mouths; (4) distinctive contrasting and non-monochrome coloring; and (5) short-pile velvety velour-like textured exterior with a light and silky memory foam-like stuffing providing an extremely soft and squeezable marshmallow feel. These features, and the resulting overall look and feel of the toys bearing them, are more fully depicted, without limitation, in **Exhibit 1** hereto (collectively, together with **Exhibit 1**, the "Squishmallows Trade Dress").

32. Kellytoy Worldwide has, beginning in 2016 and continuing without interruption, expended a great deal of time, effort, and money in the promotion of its Squishmallows line. And due to Kellytoy Worldwide's distinctive designs, robust marketing efforts, media coverage, and market penetration, the Squishmallows Trade Dress has acquired distinctiveness in the

marketplace when applied to plush toys. As a further result of Kellytoy Worldwide's extensive promotional activities and widespread display of its Squishmallows directed to the public and as a result of the fairness and integrity mentioned above, the relevant consuming public has come to recognize and associate plush toys bearing the Squishmallows Trade Dress as high quality goods connected with or offered by a single source, Kellytoy Worldwide. The Squishmallows Trade Dress thus embodies valuable goodwill and consumer recognition associated with it and has come to symbolize the valuable goodwill and reputation of Kellytoy Worldwide.

33. Beyond merely being original and inherently distinctive, the Squishmallows Trade Dress is also widely recognized by consumers. A simple Internet search using the Google search engine yields, for example, about 1,370,000 "hits" for the search term "Squishmallows."

34. The scope of Kellytoy Worldwide's sales reflects the market penetration of its intellectual property. The company markets and sells Squishmallows not only through thousands of retail stores nationwide, but additionally on its website <squishmallows.com> featuring dozens of copyright-protected photographs of its plush toys and models holding its Squishmallows. Copies of selected pages from website located at <squishmallows.com> are attached as **Exhibit 4**. Kellytoy Worldwide's Squishmallow website traffic has, not surprisingly, grown exponentially since its launch in 2017, and has now reached an average in excess of 5,500 visits per day.

35. Kellytoy Worldwide also actively engages in promoting its line of Squishmallows branded plush toys through its numerous social media accounts, including on Instagram, Facebook, and Twitter. Indeed, Kellytoy Worldwide's legion of loyal fans of its line of Squishmallows branded plush toys have been extremely engaged on social media, including Facebook and Instagram, demonstrating their awareness and affection for Kellytoy Worldwide's

Squishmallows.  For example, the average Squishmallows post likes on Instagram, for example, hovering over 2000+ per post and 45-100 average comments per post.  In fact, Kellytoy Worldwide's Squishmallows branded plush toys have garnered over 200 Million media impressions.

36.    Kellytoy Worldwide uses digital ads to advertise its Squishmallows plush toys. Owing to their immense popularity, these ads promoting specific retailers have average click through rates of 30+% (the industry average is rates of 30+% (the industry average is 1-2%).

37.    Further adding to their recognition and secondary meaning in the marketplace, Squishmallows have been featured in over 300 publications, including magazines, press articles, reviews, and videos, as set forth in greater detail in **Exhibit 5** hereto, including many mainstream media publications such as the *Washington Post*, the *Chicago Tribune*, the *Daily Harold*, O*kay! Magazine*, among others.  By way of example only, Squishmallows have been also recognized by: (1) The *Washington Post* and *Consumer Reports* on their 2017 Holiday Gift Guides; (2) *LA Parent* in its October 2017 issue, under the "Products We Love" section, which specifically identified Squishmallows; and (3) *OK!* Magazine in its August 21, 2017 issue, which, as depicted below, featured Squishmallows and described them in flattering terms, stating "Cuddly as they are cute, they make great couch pals, pillows and bedtime buddies in any home.  Collect the whole squad!  squishmallows.com."



38.     There are myriad further examples of the popularity and market penetration of the Squishmallows line.  To name just a few, Squishmallows were featured in the October 2017 issues of *L.A. Parent* Magazine, *City Parent Magazine*, and *San Diego Family Magazine* and included in the 2017 gift guides for various publications, including in *The Washington Post*, *The Houston Chronicle*, and *L.A. Parent*.

39.     In fact, Kellytoy Worldwide's Squishmallows sold out through Walgreens.com during their Gift of the Week promotion in early November 2017, as well as exceeding all sales goals for the campaign, both online and in stores.

40.     Reflecting the quality of the goods, Kellytoy Worldwide's Squishmallows have also received numerous industry awards and product recommendation lists, including by the National Parenting Product Awards, Parents' Choice, and TTPM, as more fully set out in **Exhibit 5**.  Thus, for example, Kellytoy Worldwide's Squishmallows were named by *Toy Insider* as one of the "Top Holiday Toys," made the cover the September/October 2017 *Toy Book*

*Magazine*, and have been featured in numerous other trade magazines, such as, *Teddy Bear and Friends Magazine* and *Animal Tales Magazine*.

41.     The popular blog *Trendy Mom Reviews* listed Squishmallows as one of "The Best Gifts for 2018!"  Similarly, the popular blog *Two Kids And A Coupon* did its own review of Kellytoy Worldwide's Squishmallows branded plush, saying, among other things, that they are "a gift for anyone on our list this holiday!"

42.     Squishmallows branded toys were also:  (1) named one of "The Best New Toys" by Minnesota Parent Magazine! and was named a Great Holiday Gifts For Littles by Texas Lifestyle Magazine!; (2) selected as among the "5 Editor's Picks From Toy Fair" 2019 by *Gifts & Decorative Accessories*; (3) featured by *The Toy Insider* in connection with its March 13, 2019 article entitled "Tips for Tackling Testing & Student Stress"; (4) featured on the cover of *The Toy Book's* "Plush Issue" and its Toy Fair New York 2019 issue, in *The Toy Book's* August 5, 2019 issue (specifically featuring the upcoming Halloween Squishmallows line), and in *The Toy Book's* issue (specifically featuring the Squishmallows branded turtle) on May 15, 2019; (5) featured in *TFE Toys & Family Entertainment's* NYC Toy Fair 2019 issue; and (6) won the *Parent and Teacher Choice Award* for 2019 from HowtoLearn.com.

43.     Kellytoy Worldwide's Squishmallows have become so popular that they were included in the celebrity gift bags distributed to the celebrity attendees in connection with the 2019 Teen Choice Awards, including Jenn Ortega, Lucy Hale, Lil Nas X, Sarah Hyland, One Republic, among numerous others.

44.     This widespread publicity and recognition has occurred in conjunction with Kellytoy Worldwide's advertising efforts concerning Squishmallows, which, as alleged above, have comprised consistent and robust marketing campaigns, including email campaigns, social

media posts, and direct to consumer advertising. Kellytoy Worldwide's Squishmallows currently have over 100,000 Instagram followers, nearly than 80,000 Facebook followers – more than many longer-existing and well-known plush brands. To its followers, Kellytoy Worldwide regularly publishes photographs of its Squishmallows plush toys. Many of these followers, in turn, share these posts with their friends and social media followers. A copy of Squishmallows Instagram page, bearing photographs of Squishmallows plush toys, is attached as **Exhibit 6**.

45.     In addition, hundreds of well-known YouTube influencers and vloggers have shared and posted images and videos of themselves holding plush toys in Kellytoy Worldwide's line of Squishmallows products. Tens of thousands of consumers have done the same through numerous media platforms, including, Facebook, Instagram, Pinterest and YouTube. These posts have generated millions of "likes" and "shares" and all feature, among other things, depictions of Kellytoy Worldwide's Squishmallows plush toys. In fact, several members of the public have created their own Instagram fan accounts and Facebook groups, all bearing content featuring Squishmallows branded plush toys.

46.     Kellytoy Worldwide's Squishmallows are listed amongst the leading global brands and toys such as Hatchimals, Hasbro, RB, Hot Wheels, NERF, and Spin Master by several industry publications.

47.     As a direct result of Kellytoy Worldwide's efforts at promoting and building its brand, Kellytoy Worldwide's Squishmallows line has exploded in popularity, creating substantial demand for and interest in Squishmallows, and generating enormous goodwill in the Squishmallows Trade Dress in the United States and around the world. In fact, Kellytoy Worldwide's Squishmallows are sold through hundreds of retailers including some of the largest retailers in the country, including, approximately 1,000 Costco stores, 5,500 Wal-Mart stores,

8,500 Walgreens stores, 6,200 CVS stores, 4,000 Kroger supermarkets and Fred Meyer stores, 1,800 Target stores, 700 Justice stores, 900 Party City stores, amongst other outfits such as Dave & Busters, Justice, Hallmark stores, Albertson's, Knotts Berry Farms and numerous others.

48.     Furthermore, during several summer 2019 grand openings for Costco, the highly coveted 24 inch Squishmallows plush sold out within two days, exceeding store expectations and projected demand.

49.     Since the summer of 2017, Kellytoy Worldwide has shipped approximately a whopping 40 million (40,000,000) units of Squishmallows and there is no indication that sales will be slowing down anytime soon.  Kellytoy's Squishmallows products embodying the Trade Dress have yielded tens of millions of dollars of sales in the U.S. over the past year.

50.     Nor has the pace of sales of Kellytoy Worldwide's Squishmallows branded toys slowed.  To the contrary, sales of Squishmallows plush have been steadily increasing and there is no indication of their popularity waning any time soon.  These goods have, in fact, become so popular among, sought after by, and recognizable as a brand by the public that some members of the public have been selling unauthorized merchandise, such as T-shirts and jewelry, bearing the images of some of Kellytoy Worldwide's most popular Squishmallows branded toys.  Few plush lines can boast having third parties attempt to "merchandise" its copyrighted designs and goods generally bearing its trademark – something typically reserved for Disney, Looney Tunes, and the like.  But while Kellytoy has since put a stop to these unauthorized uses, it has preserved exemplars of some such infringements by three different infringers, as depicted below:

  

14



51.     The immense popularity – indeed ubiquity – of Kellytoy Worldwide's Squishmallows line of plush toys, including those set forth on **Exhibit 1**, has now reached the point where Kellytoy Worldwide has recently embarked on a global initiative to license the Squishmallows designs and trademark to include diverse categories of merchandise, including apparel, sleepwear, accessories, headwear, home decor, health and beauty, back to school, stationery and paper goods, games and puzzles, novelty, publishing and magazines, food and beverage, and mobile gaming.  (*See*, *e.g.*, **Exhibit 7** hereto.)

52.     As a result of the extensive efforts to promote, advertise and sell the products embodying the Squishmallows Trade Dress, consumers have come to associate the Squishmallows Trade Dress with a designation of source and the products are inherently distinctive and/or have acquired secondary meaning.

53.     All of which is to reiterate that due to Squishmallows' massive success and popularity, consumers have come to associate Kellytoy Worldwide's high-quality Squishmallows plush toys with the Squishmallows Trade Dress and, conversely, have come to

recognize the Squishmallows Trade Dress as a designation of source. But that success has come at a price – the popularity of Squishmallows branded goods has attracted many imitators, such as Defendants, all of whom are attempting to benefit from Kellytoy's hard earned goodwill, and to do so illegally. In fact, Kellytoy has pursued numerous third-party infringers who have co-opted the Squishmallows Trade Dress and succeeded in stemming such infringements. Defendants, however, are uniquely positioned in the marketplace – through their massive marketing and distribution network – to capitalize upon Kellytoy Worldwide's Trade Dress, as discussed in greater detail below.

### Defendants' Unlawful Conduct

54.     At the outset, none of the defendants to this action is licensed or otherwise authorized by Kellytoy to market or distribute products bearing or embodying Kellytoy USA's PUFFY Mark or Kellytoy Worldwide's Squishmallows Trade Dress. Ty is a direct competitor of Kellytoy in the plush toy market.

55.     Ty has made a career out of copying the original designs of others and using its large market share to usurp the goodwill of its competitors. Ty is a serial copier of the original designs of others.

56.     Most recently, during the week of the Atlanta International Gift & Home Furnishings Market tradeshow (the "Atlanta Gift Show"), Kellytoy USA learned that, in spite of Kellytoy USA's prior use and registration of the PUFFY Mark, Ty had a pending United States trademark application, based on intent to use, for the trademark TY PUFFIES. During that same show, Kellytoy Worldwide learned that Ty was offering for sale at that same tradeshow goods that embody the Squishmallows Trade Dress.

57.     Consequently, by letter dated January 15, 2020, Kellytoy wrote directly to

defendant Ty demanding that it cease-and-desist from using Kellytoy USA's PUFFIES

trademark and copying Kellytoy Worldwide's Squishmallows Trade Dress. Ty responded by

denying its wrongful conduct and essentially stating its intention to continue to infringe

Kellytoy's proprietary rights by continuing to offer the Infringing Plush for sale, including at the

upcoming New York Toy Fair – the biggest toy tradeshow in the country, if not the world.

58.     Kellytoy USA is informed and believes that sometime in 2019, and notably well

after Kellytoy USA established its reputation in its PUFFY Mark and Kellytoy Worldwide

established its reputation in its Squishmallows Trade Dress – and after the Mark and Trade Dress

acquired distinctiveness in the marketplace – Defendant Ty began offering for sale various plush

toy lines bearing a trademark and trade dress that were substantially and confusingly similar to

Kellytoy USA's PUFFY Mark and to Kellytoy Worldwide's Squishmallows Trade Dress.

59.     Specifically, Kellytoy USA is informed and believes that, at the Atlanta

International Gift & Home Furnishings Market tradeshow (the "Atlanta Gift Show"), Ty used the

PUFFIES trademark in connection with its plush toys (hereinafter collectively referred to as the

"Infringing Puffies") that bears close similarity, in sight, sound, and meaning with Kellytoy

USA's PUFFY Mark and, as set forth below:



60.     Making matters even worse, at the same tradeshow, Ty displayed and marketed plush toys under the moniker "Squish-a-Boos" bearing the Squishmallows Trade Dress (hereinafter collectively referred to as the "Infringing Squish Plush") – plush toys that so closely resemble the unique "look and feel" of the Squishmallows Trade Tress that manifest customer confusion was plainly intended and is certain to occur.  Photographs of the Infringing Squish Plush are collectively attached hereto as **Exhibit 8**.

61.     Defendants' Infringing Puffies and Infringing Squish Plush shall hereinafter be referred to collectively as the "Infringing Plush."

62.     Kellytoy is specifically informed and believes, for example, that Defendants manufactured in, and imported from, China the Infringing Plush into the United States for the purpose of having the Infringing Plush enter interstate commerce and/or to be transported or used in interstate commerce through the same channels of trade through which Kellytoy USA sells its

PUFFY branded plush and Kellytoy Worldwide sells its Squishmallows. Indeed, both Kellytoy and Ty sell plush toys to many of the same large retailers, such as Walgreens, Fred Meyer, Kroger, and CVS.

63.     In fact, Kellytoy Worldwide currently sells its authentic SQUISHMALLOWS branded plush to Walgreens, Fred Meyer, Kroger, and CVS and expects that Ty will make attempts to sell to its copies of Kellytoy's Squishmallows at prices lower than Kellytoy Worldwide sells its authentic Squishmallows.

64.     Such unauthorized activities are clearly intended to draw on the goodwill Kellytoy USA has garnered in its PUFFY Mark and that Kellytoy Worldwide has garnered in its Squishmallows Trade Dress, and to compete unfairly and illegally for Kellytoy's customers through trademark confusion, trade dress confusion, and predatory tactics.

65.     Kellytoy is informed and believes, for example, that Ty has been offering to sell the Infringing Squishy Plush to customers at prices that are lower than the prices charged by Kellytoy Worldwide for its authentic Squishmallows branded plush. Kellytoy Worldwide is further informed and believes that Ty is able to undercut Kellytoy Worldwide's sales prices because, rather than investing in creating its own designs and identity, Ty has instead copied and infringed Kellytoy Worldwide's proprietary Squishmallows Trade Dress and otherwise because its Infringing Squishy Plush are of inferior quality as compared to Kellytoy Worldwide's SQUISHMALLOW branded plush.

66.     Kellytoy is additionally informed and further believes that Defendants, without Kellytoy's consent or permission, advertise, promote, and display, and intend to sell and distribute, the Infringing Plush in United States commerce and that Defendants' Infringing Plush are marketed and will be sold in the same channels of trade as Kellytoy's authentic plush toys.

67.     The Defendants deliberate misconduct in copying, advertising, and, offering for sale and otherwise using the PUFFY Mark trademark and the Squishmallows Trade Dress in connection with the Infringing Plush – including by copying wholesale the shape and look of Kellytoy Worldwide's Squishmallows Trade Dress – constitute trademark infringement, trade dress infringement, and false designation of origin regarding sponsorship of those plush toys and falsely represent to the public that the Infringing Plush originate from a common source with Kellytoy's authentic PUFFY branded and Squishmallows plush toys, and/or that Defendants' Infringing Plush have been sponsored, approved or licensed by Kellytoy, or in some way affiliated or connected with Kellytoy.

68.     These activities are likely to confuse, mislead, and deceive Defendants' customers, purchasers, and members of the public as to the origin of Defendants' toys bearing the PUFFIES trademark and the Squishmallows Trade Dress, or to cause such persons to believe that Defendants' Infringing Plush and/or Defendants have been sponsored, approved, authorized, or licensed by Kellytoy or in some way affiliated or connected with Kellytoy, all in violation of, among other laws, 15 U.S.C. §§ 1114 and 1125(a).

69.     Kellytoy is informed and believes that the Defendants' activities were conducted willfully with full knowledge of the falsity of such designations of origin and false descriptions or representations, with the intent to trade on the enormous goodwill Kellytoy USA has earned in its PUFFY Mark and Kellytoy Worldwide has garnered in its Squishmallows Trade Dress, and with the intent to cause confusion, and to mislead and deceive the purchasing public into believing that the products Defendants offer for sale and sell are directly sponsored by, authorized, by, associated with, or originate from Kellytoy or, at the very least, from a common source as Kellytoy's PUFFY and SQUISHMALLOWS branded plush toys.

70.     Defendants, by their unauthorized infringement, copying and use of Kellytoy's PUFFY Mark and Squishmallows Trade Dress, have engaged and will engage in acts of trademark infringement, unfair competition, unlawful appropriation, unjust enrichment, wrongful deception of the purchasing public, and unlawful trading on Kellytoy's good will and the public acceptance of Kellytoy's original works.  Defendants' activities have damaged and will continue to damage the reputation, business and good will of Kellytoy nationally and in this judicial district.

71.     Upon information and belief, unless enjoined by the Court, Defendants will continue and further escalate their infringing activities.

72.     Kellytoy has no adequate remedy at law.  Thus, these activities of Defendants have caused and, if not enjoined, will continue to cause irreparable, immediate and impending harm and damage to Kellytoy's business, and to the business, business reputation and good will of Kellytoy.

## FIRST CAUSE OF ACTION

**(Federal Trademark Infringement – 15 U.S.C. § 1114(1)-(2))**
(All Defendants)

73.     Kellytoy USA repeats, realleges and incorporates each of the allegations made above as if fully set forth herein.

74.     Kellytoy USA owns and has a protectable interest in the registered PUFFY Mark.

75.     As the owner of all rights, title and interest in and to the PUFFY Mark, Kellytoys USA has standing to maintain in action for trademark infringement under the Lanham Act, including 15 U.S.C. §1114.

76.     Without Kellytoy USA's authorization or consent, and having knowledge of Kellytoy USA's prior rights in the PUFFY Mark, Defendants have designed, manufactured,

distributed, advertised, offered for sale and/or sold highly similar plush toys bearing the highly similar trademark, PUFFIES, to the consuming public in direct competition with Kellytoy USA, in or affecting interstate commerce.

77.    Defendants have caused actual confusion, a likelihood of confusion, mistake and deception as to the source of origin, sponsorship, authorization, association, or affiliation of Defendants' goods, such that the public has been confused and there is a likelihood that the public will be confused into believing that the products Defendants promote, distribute, and sell are directly sponsored by, associated with, or originate from the same source as Kellytoy USA's plush toys sold in connection with the PUFFY Mark.

78.    Defendants' use of the PUFFY Mark violates sections 32(1) and (2) of the Lanham Act, 15 U.S.C. § 1114(1)-(2), because it constitutes unauthorized, willful and/or deliberate use in commerce of reproductions, counterfeits, copies, and/or colorable imitations of Kellytoy USA's federally-registered mark in connection with the sale, offering for sale, distribution, and advertising of products and services in a manner likely to cause confusion, mistake, and deception.

79.    On information and belief, Defendants' acts have been willful and deliberate.

80.    As a direct and proximate result of Defendants' unlawful conduct, Defendants have misappropriated Kellytoy USA's rights in the PUFFY Mark, as well as the goodwill associated therewith, and have diverted sales and profits from Kellytoy USA to Defendants. Thus, as a direct and proximate result of Defendants' acts of willful infringement, Kellytoy USA has suffered damage to its valuable brand and reputation, and other damages in an amount to be proven at trial, including Defendants' profits and Kellytoy USA's lost profits.

81.    Defendants' actions described above have caused and will continue to cause

irreparable damage to Kellytoy USA, unless Defendants are restrained by this Court. Kellytoy

USA has no adequate remedy at law with regard to Defendants' infringing conduct.

Accordingly, Kellytoy USA is entitled to a preliminary and permanent injunction, pursuant to 15

U.S.C. § 1116, restraining and enjoining Defendants' and their agents, servants, and employees,

and all persons acting thereunder, in concert with, or on their behalf, from using Kellytoy USA's

PUFFY Mark, or any colorable imitation or variation thereof, including PUFFIES, in connection

with the sale and/or marketing of any products.

82.     Defendants' aforesaid acts are exceptional within the meaning of 15 U.S.C. §

1117.

## SECOND CAUSE OF ACTION

### (Trademark Infringement and
### False Designation of Origin and False Description -- 15 U.S.C. §1125)
(All Defendants)

83.     Kellytoy USA repeats, realleges and incorporates each and every allegation made

above as if fully set forth herein.

84.     Kellytoy USA owns and has a protectable interest in the registered PUFFY Mark.

As the owner of all rights, title and interest in and to PUFFY Mark, Kellytoy USA has standing

to maintain an action for false designation of origin and unfair competition under the Lanham

Act, including 15 U.S.C. § 1125.

85.     The PUFFY Mark is highly distinctive and has each become associated in the

public mind with plush toy products of the highest quality and reputation finding their origin in a

single source, Kellytoy USA.

86.     Kellytoy USA owns all right, title and interest in and to the PUFFY Mark.

87.     Without Kellytoy USA's authorization or consent, and having knowledge of

Kellytoy USA's prior rights in the PUFFY Mark, Defendants have imported, distributed, advertised, offered for sale and sold, and/or will continue to import, distribute, advertise, offer for sale, highly similar plush toys bearing the highly similar trademark, PUFFIES, to the consuming public in direct competition with Kellytoy USA, in or affecting interstate commerce.

88.     Defendants' PUFFIES trademark is confusingly similar to the PUFFY Mark. Defendants' use of the PUFFY Mark has caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the public and, additionally, injury to Kellytoy USA's goodwill and reputation as symbolized by the PUFFY Mark.

89.     Defendants' use and further threatened uses of the PUFFY Mark thus constitutes trademark infringement, false designation of origin, and/or unfair competition in violation of 15 U.S.C. § 1125(a).

90.     As a direct and proximate result of Defendants' unlawful conduct, Defendants have misappropriated Kellytoy USA's rights in the PUFFY Mark, as well as the goodwill associated therewith, and have diverted sales and profits from Kellytoy USA to Defendants. Thus, as a direct and proximate result of Defendants' acts of willful infringement, Kellytoy USA has suffered and/or will suffer damage to its valuable brand and reputation, and other damages in an amount to be proven at trial, including Defendants' profits and Kellytoy USA's lost profits.

91.     Defendants' actions described above will cause, have caused, and will continue to cause irreparable damage to Kellytoy USA, unless Defendants are restrained by this Court. Kellytoy USA has no adequate remedy at law with regard to Defendants' infringing conduct. Accordingly, Kellytoy USA is entitled to a preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116, restraining and enjoining Defendants' and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, both from using the PUFFY

Mark, or any colorable imitations or variations thereof, in connection with the sale and/or marketing of any products.

92.     Defendants' aforesaid acts are exceptional within the meaning of 15 U.S.C § 1117.

### THIRD CAUSE OF ACTION

**(Trademark Infringement, Trade Dress Infringement,
False Designation of Origin and False Description -- 15 U.S.C. §1125)**
(All Defendants)

93.     Kellytoy Worldwide repeats, realleges and incorporates each and every allegation made above as if fully set forth herein.

94.     Kellytoy Worldwide owns and has a protectable interest in the Squishmallows Trade Dress.

95.     As owner of all rights, title and interest in and to the Squishmallows Trade Dress, Kellytoy Worldwide has standing to maintain an action for trade dress infringement under the Lanham Act including, 15 U.S.C. § 1125.

96.     The Squishmallows Trade Dress is non-functional and highly distinctive and has each become associated in the public mind with plush toy products of the highest quality and reputation finding their origin in a single source, Kellytoy Worldwide.

97.     The Squishmallows Trade Dress has acquired secondary meaning based upon, at least in part to, the amount and manner of advertising of products embodying the Squishmallows Trade Dress, the volume of sales, as well as, the length and manner of use of the products.

98.     The Squishmallows Trade Dress is nonfunctional.

99.     Without Kellytoy Worldwide's authorization or consent, and having knowledge of Kellytoy Worldwide's prior rights in the Squishmallows Trade Dress, Defendants have

designed, manufactured, imported, distributed, advertised, offered for sale and/or sold and/or will continue to import, distribute, advertise, offer for sale, and sell replicas of the Squishmallows Trade Dress to the consuming public in direct competition with Kellytoy Worldwide, in or affecting interstate commerce.

100.     The Infringing Squishy Plush designs are, each alone and together, confusingly similar to the Squishmallows Trade Dress.  Defendants' use of the Squishmallows Trade Dress has caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the public and, additionally, injury to Kellytoy's goodwill and reputation as symbolized by the Squishmallows Trade Dress.

101.     Defendants' use and further threatened uses of the Squishmallows Trade Dress thus constitute trademark infringement, trade dress infringement, false designation of origin, and/or unfair competition in violation of 15 U.S.C. § 1125(a).

102.     As further evidence of Ty's intent to trade upon Kellytoy Worldwide's goodwill in Kellytoy Worldwide's Squishmallows Trade Dress, in order to ensure consumer confusion, Defendants adopted a mark – for use in connection with the Infringing Squishy Plush, namely Squish-A-Boos – that includes the same "squish" prefix and that has same number of syllables and sound as the SQUISHMALLOW Mark.

103.     As a direct and proximate result of Defendants' unlawful conduct, Defendants have misappropriated Kellytoy Worldwide's rights in the Squishmallows Trade Dress, as well as the goodwill associated therewith, and have diverted sales and profits from Kellytoy worldwide to Defendants. Thus, as a direct and proximate result of Defendants' acts of willful infringement, Kellytoy Worldwide has suffered and/or will suffer damage to its valuable brand and reputation, and other damages in an amount to be proven at trial, including Defendants' profits and Kellytoy

Worldwide's lost profits.

104.    Defendants' actions described above will cause, have caused, and will continue to cause irreparable damage to Kellytoy Worldwide, unless Defendants are restrained by this Court. Kellytoy Worldwide has no adequate remedy at law with regard to Defendants' infringing conduct. Accordingly, Kellytoy Worldwide is entitled to a preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116, restraining and enjoining Defendants' and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, both from using Kellytoy Worldwide's Squishmallows Trade Dress, or any colorable imitations or variations thereof, in connection with the sale and/or marketing of any products.

105.    Defendants' aforesaid acts are exceptional within the meaning of 15 U.S.C § 1117.

## FOURTH CAUSE OF ACTION

### (Common Law Trade Dress Infringement)
(All Defendants)

106.    Kellytoy Worldwide repeats, realleges and incorporates each and every allegation made above as if fully set forth herein.

107.    This claim arises under the common law of this State relating to trade dress infringement. This Court has jurisdiction over the subject matter of this claim pursuant to the provisions of 28 U.S.C. § 1338(b), this being a claim of unfair competition joined with a substantial and related claim under the Trademark Laws of the United States, and under 28 U.S.C. § 1367.

108.    Kellytoy Worldwide is the owner of all right, title, and interest in and to the Squishmallows Trade Dress used by Kellytoy Worldwide by virtue of its extensive manufacture and sale of products bearing such trademarks and trade dress as set forth in the preceding

paragraphs of this Complaint. In particular, because of their enormous sales and publicity, Kellytoy Worldwide has acquired common law trade dress rights in and to the Squishmallows Trade Dress. Kellytoy Worldwide's common law trade dress is distinctive, and furthermore, have acquired secondary meaning.

109.    The infringing products imported, advertised, distributed, offered for sale and sold by Defendants incorporate matter constituting replicas and imitations of Kellytoy Worldwide's common law trade dress. Such unauthorized use by Defendants of Kellytoy Worldwide's common law trade dress constitutes common law trade dress infringement and unfair competition, and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source of the products and to cause purchasers to believe such products are authentic products of Kellytoy Worldwide when, in fact, they are not.

110.    Upon information and belief, Defendants have willfully and intentionally misappropriated one or more aspects of Kellytoy Worldwide's common law trade dress with the intent of causing confusion, mistake, and deception as to the source of its goods and with the intent to palm off its goods as those of Kellytoy Worldwide and to place others in the position to palm off its goods as those of Kellytoy Worldwide, and as such, Defendants have committed trade dress infringement and unfair competition under the common law.

111.    By such actions in infringing' Kellytoy Worldwide's common law trade dress, Defendants are improperly trading upon the enviable reputation and goodwill of Kellytoy Worldwide and impairing' Kellytoy Worldwide's valuable rights in and to such trade dress.

112.    Kellytoy is informed and believes, and thereupon alleges, that Defendants committed the above alleged acts in conscious disregard of Kellytoy Worldwide's rights, and Kellytoy Worldwide is therefore entitled to exemplary and punitive damages pursuant to the

common law of the State of Illinois.

113.    Kellytoy Worldwide has no adequate remedy at law. The conduct of Defendants has caused and, if not enjoined, will continue to cause, irreparable damage to Kellytoy Worldwide's rights in and to its trade dress, and to Kellytoy Worldwide's business, reputations, and goodwill.

## FIFTH CAUSE OF ACTION

**(Deceptive Trade Practices Pursuant to 815 ILCS §§ 510/1, *et seq*)**
(All Defendants)

114.    Kellytoy Worldwide repeats, realleges and incorporates each and every allegation made above as if fully set forth herein.

115.    Defendants have knowingly and willfully engaged in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Sections 510/1 *et seq.* by causing likelihood of confusion misleading as to the source, origin or sponsorship of the parties' respective products, causing likelihood of confusion or of misunderstanding as to the affiliation, connection or association of Defendants with the Squishmallows Trade Dress and using deceptive representations or designations of origin in connection with Defendants' products.

116.    The foregoing acts of Defendants constitute willful, deceptive acts and practices in the conduct of business, trade and/or commerce, in violation of Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Sections 510/1 *et seq.,* for which Kellytoy Worldwide is entitled to injunctive relief, actual damages, treble damages, punitive damages, attorneys' fees, and costs. The foregoing acts of Defendants will create a likelihood of injury to the public image and business reputation of Kellytoy Worldwide, in that the public will likely associate Defendants' goods with Kellytoy Worldwide and/or Kellytoy Worldwide's goods, and cause the dilution of

the distinctive quality of Kellytoy Worldwide's Squishmallows Trade Dress, and Kellytoy Worldwide's common law trade dress in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1 *et seq*., for which Kellytoy Worldwide is entitled to injunctive relief.

117.    The foregoing acts of Defendants were calculated and designed intentionally to mislead and deceive the public and trade as to the identity of Defendants or as to the connection of Defendants with Kellytoy Worldwide, in violation of 815 ILCS §§ 510/1 *et seq*., for which Kellytoy Worldwide is  entitled to injunctive relief.

118.    The unauthorized use by Defendants of the Squishmallows Trade Dress is causing and is likely to cause substantial injury to the public and to Kellytoy Worldwide.

### SIXTH CAUSE OF ACTION

**(Illinois Common Law Unfair Competition)**
(All Defendants)

119.    Kellytoy Worldwide repeats, realleges and incorporates each and every allegation made above as if fully set forth herein.

120.    Defendants' acts constitute common law trade dress infringement in violation of state common law, including the common law of the State of Illinois. Such acts of common law trade dress infringement constitute unfair competition within the meaning of the common law, including the common law of the State of Illinois.

121.    Upon information and belief, Defendants' conduct was and continues to be willful, intentional, and in bad faith.

122.    Defendants' acts have caused, and continue to cause, irreparable harm to Kellytoy Worldwide, and Kellytoy Worldwide is left with no adequate remedy at law such that the damage to Kellytoy Worldwide will continue unless and until enjoined by the Court.

## SEVENTH CAUSE OF ACTION

**(Common Law Trademark Infringement)**
(All Defendants)

123.    Kellytoy USA repeats, realleges and incorporates each and every allegation made above as if full set forth herein.

124.    This claim arises under the common law of this State relating to trademark infringement. This Court has jurisdiction over the subject matter of this claim pursuant to the provisions of 28 U.S.C. § 1338(b), this being a claim of unfair competition joined with a substantial and related claim under the Trademark Laws of the United States, and under 28 U.S.C. § 1367.

125.    Kellytoy USA is the owner of all right, title, and interest in and to the PUFFY Mark used by Kellytoy USA by virtue of its extensive manufacture and sale of products bearing such trademark as set forth in the preceding paragraphs of this Complaint. In particular, because of their enormous sales and publicity, Kellytoy USA has acquired common law trademark rights in and to the PUFFY Mark. Kellytoy USA's common law trademark is distinctive, and furthermore, has acquired secondary meaning.

126.    The infringing products imported, advertised, distributed, offered for sale and sold by Defendants incorporate matter constituting replicas and imitations of Kellytoy USA's common law trademark. Such unauthorized use by Defendants of Kellytoy USA's common law trademark constitutes common law trademark infringement and unfair competition, and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source of the products and to cause purchasers to believe such products are authentic products of Kellytoy USA when, in fact, they are not.

127.    Upon information and belief, Defendants have willfully and intentionally

misappropriated one or more aspects of Kellytoy USA's common law trademark with the intent of causing confusion, mistake, and deception as to the source of its goods and with the intent to palm off their goods as those of Kellytoy USA and to place others in the position to palm off its goods as those of Kellytoy USA, and as such, Defendants have committed trademark infringement and unfair competition under the common law.

128.    By such actions in infringing' Kellytoy USA's common law trademark, Defendants are improperly trading upon the enviable reputation and goodwill of Kellytoy USA and impairing' Kellytoy USA's valuable rights in and to such trademark.

129.    Kellytoy USA is informed and believes, and thereupon alleges, that Defendants committed the above alleged acts in conscious disregard of Kellytoy USA's rights, and Kellytoy USA is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of Illinois.

130.    Kellytoy USA has no adequate remedy at law. The conduct of Defendants has caused and, if not enjoined, will continue to cause, irreparable damage to Kellytoy USA's rights in and to its trademark, and to Kellytoy USA's business, reputation, and goodwill.

## EIGHTH CAUSE OF ACTION

**(Deceptive Trade Practices Pursuant to 815 ILCS §§ 510/1, *et seq*)**
(All Defendants)

131.    Kellytoy USA repeats, realleges and incorporates each and every allegation made above as if set forth herein.

132.    Defendants have knowingly and willfully engaged in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Sections 510/1 *et seq.* by causing likelihood of confusion misleading as to the source, origin or sponsorship of the parties' respective products, causing likelihood of confusion or of

32

misunderstanding as to the affiliation, connection or association of Defendants with the PUFFY

Mark and using deceptive representations or designations of origin in connection with

Defendants' products.

133.    The foregoing acts of Defendants constitute willful, deceptive acts and practices

in the conduct of business, trade and/or commerce, in violation of Illinois Uniform Deceptive

Trade Practices Act, 815 ILCS Sections 510/1 *et seq.,* for which Kellytoy USA is entitled to

injunctive relief, actual damages, treble damages, punitive damages, attorneys' fees, and costs.

The foregoing acts of Defendants will create a likelihood of injury to the public image and

business reputation of Kellytoy USA, in that the public will likely associate Defendants' goods

with Kellytoy USA and/or Kellytoy USA's goods, and cause the dilution of the distinctive

quality of Kellytoy USA's PUFFY Mark in violation of the Illinois Uniform Deceptive Trade

Practices Act, 815 ILCS §§ 510/1 *et seq*., for which Kellytoy USA is entitled to injunctive relief.

134.    The foregoing acts of Defendants were calculated and designed intentionally to

mislead and deceive the public and trade as to the identity of Defendants or as to the connection

of Defendants with Kellytoy USA, in violation of 815 ILCS §§ 510/1 *et seq*., for which Kellytoy

USA is entitled to injunctive relief.

135.    The unauthorized use by Defendants of the PUFFY Mark is causing and is likely

to cause substantial injury to the public and to Kellytoy USA.

## NINTH CAUSE OF ACTION

### (Illinois Common Law Unfair Competition)
### (All Defendants)

136.    Kellytoy USA repeats, realleges and incorporates each and every allegation made

above as if fully set forthp herein.

137.    Defendants' acts constitute common law trademark infringement in violation of

state common law, including the common law of the State of Illinois. Such acts of common law trademark infringement constitute unfair competition within the meaning of the common law, including the common law of the State of Illinois.

138.    Upon information and belief, Defendants' conduct was and continues to be willful, intentional, and in bad faith.

139.    Defendants' acts have caused, and continue to cause, irreparable harm to Kellytoy USA, and Kellytoy USA is left with no adequate remedy at law such that the damage to Kellytoy Worldwide will continue unless and until enjoined by the Court.

## JURY DEMAND

Kellytoy Worldwide and Kellytoy USA demand a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Kellytoy Worldwide and Kellytoy USA pray for judgment against Defendants as follows:

1.    That Defendants, their officers, members, directors, agents, servants, employees, successors, licensees, representatives, successors, assigns, and all persons acting in concert or participation with them, be preliminarily and permanently enjoined and restrained from:

    (i)    Manufacturing, importing, distributing, advertising, offering to sell or selling the Infringing Plush or any colorable imitations of the PUFFY Mark or the Squishmallows Trade Dress;

    (ii)    Using the Squishmallows Trade Dress or any confusingly similar trade dress in connection with plush or other toys;

    (iii)    Using the PUFFY Mark or any confusingly similar mark, including without limitation PUFFIES, in connection with plush toys or other goods;

(iii)   Using the Squishmallows Trade Dress, or any confusingly similar mark, in connection with the advertisement, offer to sell or sale of any toy products;

(iv)   Using any false designation of origin, or representing or suggesting directly or by implication that Defendants, or any brands or other sources identifiers used by Defendants, or their toys, are affiliated with, associated with, authorized by, or otherwise connected to Kellytoy, or that Defendants are authorized by Kellytoy to use the PUFFY Mark or the Squishmallows Trade Dress;

(v)   Infringing or contributing to the infringement of any of Kellytoy's trademarks or trade names, including without limitation the PUFFY Mark and/or Squishmallows Trade Dress, or otherwise engaging in unfair competition with Kellytoy in any manner or engaging in any conduct tending to falsely represent or likely to confuse, mislead or deceive suppliers, purchasers, or any member of the public into thinking that Defendants or any of their products are affiliated with Kellytoy or that Kellytoy has otherwise sponsored, approved, or licensed any products or services of Defendants;

(vi)   Engaging in any other activity constituting unfair competition with Kellytoy, or constituting infringement of the PUFFY Mark or the Squishmallows Trade Dress; and

(vii)   Assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs (i) through (vi) above, or effecting any assignments or transfers, forming

new entities or associations, or utilizing any other device for the purpose of

circumventing or otherwise avoiding the prohibitions set forth in

subparagraphs (i) through (vii) above;

2.        That Defendants be directed to file with the Court and serve on Kellytoy, within

thirty (30) days after entry of a final injunction, a report in writing under oath setting forth in

detail the manner and form in which Defendants have complied with the injunction;

3.        That Kellytoy USA has superior rights to exclusive use in the PUFFY Mark and

that Kellytoy Worldwide Squishmallows Trade Dress in connection with toys and/or pillows vis-

à-vis Defendants;

4.        That Defendants shall not in the future file or maintain an application for

registration or registration of any mark that includes "puffy" or "puffies" or any designation(s)

confusingly similar thereto with the United States Patent and Trademark Office or any other

governmental or state authority;

5.        That the Court direct any third parties providing services to Defendants in

connection with any infringing and/or enjoined conduct, including social media platforms (*e.g.*,

Instagram, Facebook, Twitter), online marketplaces (*e.g.*, Alibaba, eBay, Etsy, AliExpress,

Amazon, Taobao), online payment providers, including credit card companies (*e.g.*, PayPal,

Visa) and other service providers (*e.g.*, Google, GoDaddy, LiveChat, Shopify) to cease

providing services to Defendants in connection with the offer for sale and sale of the Infringing

Plush or any other products using or embodying the PUFFY Mark, the Squishmallows Trade

Dress, or any design, word or designation confusingly similar to the PUFFY Mark and/or the

Squishmallows Trade Dress, including without limitation, PUFFIES, or any alternate spellings

thereof;

6.    That Defendants be required to pay Kellytoy such damages as it has sustained as a consequence of Defendants' infringement of the of each of the Squishmallows Trade Dress and the PUFFY Mark and trebling of those damages under 15 U.S.C. § 1117;

7.    Adjudge that each of the Defendants, by their unauthorized use of Kellytoy's PUFFY Mark and the Squishmallows Trade Dress for plush toys, and such other acts as it may have undertaken relating to the PUFFY Mark and/or Squishmallows Trade Dress, have violated Kellytoy's rights under 15 U.S.C. §§ 1114, 1125(a) and 1125(d), under Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Sections 510/1 *et seq., Illionois* state law, and under common law, and that they have done so willfully and for the purpose of violating Kellytoy's rights and damaging Kellytoy's goodwill and reputation in the PUFFY Mark and the Squishmallows Trade Dress;

8.    Direct Defendants to provide Kellytoy with an identification in writing of any and all entities that are presently using the PUFFY Mark or the Squishmallows Trade Dress in the United States on Defendants' behalf and inform them that they must immediately cease such use;

9.    Direct Defendants to immediately recall any and all merchandise previously provided to any United States entity bearing or using the PUFFY Mark (including, e.g., the PUFFYIES mark), or the Squishmallows Trade Dress;

10.    Enter an order, pursuant to 15 U.S.C § 1118, directing Defendants to deliver for destruction all products, brochures, marketing materials, decals, stickers, signs, prints, packages, receptacles, wrappers, boxes, and advertisements in their possession or under their control, bearing any unauthorized copy of any of the PUFFY Mark or the Squishmallows Trade Dress, or any simulation, reproduction, counterfeit, copy, confusingly similar likeness, or colorable imitation thereof, including without limitation the PUFFIES designation, and all plates, molds,

matrices, programs and other means of making same;

11.     That each Defendant provide Kellytoy in writing with the following information relating to Defendants' goods marketed, advertised, offered for sale, or sold under either or both of the PUFFY Mark and/or the Squishmallows Trade Dress:

> (i)     the name, address and telephone number of each and every United States entity to whom Defendants have made available or otherwise provided any such products; and
>
> (ii)    the total number of units distributed and sold;
>
> (iii)   the total number of units remaining in inventory; and
>
> (iv)    a full accounting as to the precise dollar amount of such products made available or provided and the profits recognized by Defendants in connection with such actions;

12.     Direct Defendants to pay the costs of corrective advertising;

13.     Direct Defendants to pay Plaintiff's attorneys' fees and costs incurred in initiating and prosecuting this action;

14.     Direct Defendants to pay punitive damages and exemplary damages according to proof;

15.     That Kellytoy recover its actual damages, Kellytoy's lost profits, and Defendant's profits arising from Defendants' conduct complained-of herein;

16.     That the Court award enhanced profits and treble damages;

17.     That Kellytoy be awarded interest, including pre-judgment interest, on the foregoing sums;

18.     That the Court direct such other actions as the Court may deem just and proper to

prevent the public from deriving the mistaken impression that any products or services offered, advertised, or promoted by or on behalf of Defendants are authorized by Kellytoy or related in any way to Kellytoy's products or services;

19.     Providing that Defendants' conduct constitutes willful, deceptive acts and practices in the conduct of business, trade and/or commerce, in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Sections 510/1 et seq. and common law  :

20.     Providing that Defendants' conduct will create a likelihood of dilution and injury to Kellytoy's business reputation in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Sections 510/1 et seq. and common law ;

21.     Providing that Defendants used Kellytoy's PUFFY Mark and/or Kellytoy's Squishmallows Trade Dress with the intent to cause confusion and to deceive the public in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Sections 510/1 et seq. and common law;

22.     Providing that Defendants have injured Kellytoy by depriving it of sales of its genuine goods and services, by injuring its business reputation, and by passing off Defendants' goods as Kellytoy's goods and/or created a likelihood of confusion and/or false designation of origin, all in violation of the common law of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Sections 510/1 et seq. and common law;

23.     Providing that Defendants' willfully misappropriated and used the PUFFY Mark and/or Squishmallows Trade Dress and such conduct constitutes misappropriation, unfair competition and unjust enrichment, all in violation of the common law of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS Sections 510/1 et seq. and common law;

24.     For such other and further relief as the Court may deem just and proper.

Dated: January 31, 2020          Respectfully submitted,

                              /s/ Dean D. Niro
                    Dean D. Niro
Oliver D. Yang
VITALE, VICKREY, NIRO, SOLON & GASEY LLP
311 S. Wacker Dr., Suite 2470
Chicago, IL 60606
(312) 236-0733
dniro@vvnlaw.com
oyang@vvnlaw.com

Todd M. Lander
Mark B. Mizrahi
FREEMAN, FREEMAN & SMILEY, LLP
1888 Century Park East, Suite 1500
Los Angeles, CA 90067
(310) 255-6100
todd.lander@ffslaw.com
mark.mizrahi@ffslaw.com